KINGS COUNTY.—HON. JACOB I. BERGEN, SURRO-
GATE.—April, 1883.

### HAGENMEYER v. HANSELMAN.*

*In the matter of the probate of the will of* MARIA
HAGENMEYER, *deceased.*

The doctrine of *superstitious uses,* according to which a legacy to pay for
saying masses for testator's soul is void, is against the spirit of our
institutions, and should not be adopted by our courts.

Testatrix, by her will, directed her executors "to pay or take from my
money the amount of one hundred dollars, for the purpose that
masses shall be read for my poor soul," and devised and bequeathed
the residue to the Roman Catholic church of M., in B., "for the
purpose that some masses shall be said for my poor soul, and for
other charity institutions, as the pastor of said church sees fit"—*Held,*

1. That the bequests were not void, as made for an illegal purpose.
2. That the omission in the former, and in the concluding portion of
the latter, clause to specifically designate a beneficiary constituted
no objection to their validity.

Power v. Cassidy, 79 *N. Y.,* 602—compared.

CONSTRUCTION of decedent's will, upon an application
for the probate thereof, made by Henry Hanselman,
executor therein named; and opposed by Christian
Hagenmeyer and others, only heirs at law and next of
kin of decedent. The facts appear sufficiently in the
opinion.

JACKSON & BURR, *for proponent.*

GEO. A. GREENSWARD, *for contestants.*

THE SURROGATE.—Maria Hagenmeyer died on Feb-
ruary 2nd, 1882, leaving her last will and testament, of
which the third and sixth clauses read as follows:

* Compare Gilman v. McArdle, 12 *Abb. N. C.,* 414.

"3rd. I further ordain and direct my executors, here-inafter named, to pay or take from my money the amount of one hundred (100) dollars, for the purpose that masses shall be read for my poor soul."

"6th. After the foregoing bequests are paid and discharged by my executor, all the rest, residue and remainder of my estate, real and personal, of any nature or kind, I give, devise and bequeath to the Roman Catholic church of the Most Holy Trinity, in Montrose avenue, Brooklyn, E. D., for the purpose that some masses shall be said for my poor soul, and for other charity institutions, as the pastor of said church sees fit."

The contestants insist that the foregoing provisions are invalid, and I am asked, upon admitting the will to probate, to determine the validity of the bequests in question, as provided by § 2624 of the Code of Civil Procedure.

The counsel for the contestants contends that the third clause is void, for the reason that there is no donee or legatee of the gift ; and further, that it was given for superstitious uses, and therefore void.

Had the decedent directed her executors to expend one hundred dollars for the purpose of erecting a monument over her grave, or the purchasing of a vault in which to place her remains, there could be no question as to the validity of the direction so long as it did not affect the right of creditors (see Emans v. Hickman, *12 Hun, 425*).

But in this case the direction is that they take "one hundred dollars for the purpose that masses be read for my poor soul." If she had the legal right to direct

the manner of her burial and the expenses to be incurred in so doing, it cannot be denied that she also had the right to direct that the amount named should be expended for masses.

But it is contended that the direction for saying masses for the souls of the dead is void, because given for superstitious uses.

That doctrine was sustained in some of the early English cases, where a legacy for that purpose was held void. In the case of West v. Shuttleworth (*2 Mylne & Keen, 684*), decided in 1835, the Chancellor says: "the legacies in question . . . . are not within the terms of the statute of Edw. 6, but that statute has been considered as establishing the illegality of certain gifts, and, amongst others, the giving legacies to priests to pray for the soul of the donor has . . . been decided to be within the superstitious uses intended to be suppressed by that statute."

The same doctrine was upheld in Heath v. Chapman (*2 Drewry, 417*).

In another case (Re Blundell's Trusts, *30 Beavan, 602*), the Master of the Rolls, upon the principle of *stare decisis*, very reluctantly follows West v. Shuttleworth (*supra*), while expressing great difficulty "whether gifts for religious ceremonies practiced by a dissenting class of religionists might not be permitted, if not opposed to public morality."

Such a legacy was sustained as a valid bequest in the case of the Commissioners of Charitable Donations and Bequests v. Walsh, reported in a note in 7 Irish Eq. R., 34.

And in the subsequent case of Read v. Hodgens (7

*Irish Eq. R.*, *17*), such a legacy was held to be valid.

While I have been unable to find any decision in this State upon the question, I prefer to accept the doctrine laid down in the Irish cases rather than that of the English, as more in accord with equal religious toleration as accepted in this country.

I am satisfied that the doctrine of superstitious uses is against the spirit of our institutions and should not be adopted by our courts. In this case the decedent was a member of the Roman Catholic church, and saying masses for the souls of the dead is a ceremony universally observed in that church.

It appears to me that such bequest cannot be said to be for superstitious uses, when we find that it is one of the articles of the Roman Catholic faith which has been adopted by millions of people through the civilized world as a part of their religious belief.

In reference to the sixth clause of the will, it is conceded that the church therein named is duly incorporated under the laws of this State, and is, therefore, authorized to accept legacies.

But it is further argued, against the validity of that clause, that the latter portion of it makes no definite beneficiaries capable of coming into court and claiming the benefit bestowed.

In the case of Power v. Cassidy (*79 N. Y.*, *602*), where the balance of the testator's estate was given to his executors to be divided among such Roman Catholic charity institutions "in the city of New York as the majority of his executors should decide and in such proportion as they should think proper," it was held valid.

The case at bar differs from that, in that it directs the pastor of the church to select the charity institutions as objects of her bounty, instead of her executors. The beneficiary need not be described by name; it is sufficient if he is so described that he can be ascertained, and know when the right to receive the gift arrives (Holmes v. Mead, *52 N. Y., 332*).

I am, therefore, of the opinion that both clauses must be construed as valid, the latter clause being subject to the limitation imposed by Chapter 360, Laws of 1860.